*161 OPINION.
Littleton:
The two principal issues involved concern the actual cash value on October 29, 1912, and the fair market value on March 1, ⅝913, of the patent and patent applications relating to the towel cabinets which were acquired for stock.
*162 That the applications for patents covering the principle of the towel cabinet and certain mechanisms for use in connection therewith were property is fully supported by various decisions of the courts and needs no argument here. Hammond v. Mason & Hamlin Organ Co., 92 U. S. 724; Hendrie v. Sayles, 98 U. S. 546; Gayler v. Wilder, 10 How. 477; De La Vergne Machine Co. v. Featherstone, 147 U. S. 209; In re Myers-Wolf Mfg. Co., 205 Fed. 289; Railroad Co. v. Trimble, 10 Wall. 367; Nicolson Pavement Co. v. Jenkins, 14 Wall. 452; Burton v. Burton Stock-Car Co., 171 Mass. 437; 50 N. E. 1029; Binney v. Annan, 107 Mass. 94; Somerby v. Buntin, 118 Mass. 279; Lamson v. Martin, 159 Mass. 557; 35 N. E. 78.
We are of the opinion from all of the evidence that the actual cash value of the patent and applications for patents at the time paid in for stock and on March 1, 1913, was $74,970.09, as claimed. A number of witnesses who had been engaged in the business of supplying towels in washrooms for a nu'mber of years, and who were fully qualified to express an opinion as to the value of the towel cabinet at the time it was acquired by the petitioner, testified that in their opinion the applications for a patent thereon were worth between $75,000 and $100,000. One of these witnesses who had for some time been in the concession business, in connection with which he was supplying about 20,000 towels a day, acquired some of the cabinets in 1912 and found that the use of the cabinets entirely eliminated the loss, which he had theretofore suffered, of 50 per cent of the towels used. Upon the incorporation, this individual endeavored to acquire 51 per cent of the stock at $100 a share, but Rousso and Wolf declined to sell. He testified that his purpose at that time was to acquire control of the corporation, that he would have been willing to purchase the entire capital stock at par, and that he had more than sufficient cash to pay for the same. He did not attempt to acquire all of the stock at $100 a share for the reason that the owners thereof refused to sell any amount. Other witnesses engaged in the saíne business testified that they were interested in acquiring stock of the petitioner upon its organization, at par, but found that the owners of the stock would not sell it.
The patent and applications for patents should therefore have been included in invested capital for each of the taxable years at a value of $74,970.09, subject to the limitations prescribed by law.
On March 23,1917, the unexhausted cost and March 1, 1913, value of the patent and applications, which became merged in the patent issued October 19, 1915, covering the principle of the device, was $68,661.33. The exhaustion of the group of patents upon the basis of the life of the principal patent granted October 19, 1915, from that date to March 23,1917, was $6,308.76.
*163 On March 23, 1917, the petitioner disposed of a portion of its capital asset represented by these patents for $17,790.81, leaving the remaining unexhausted value of the asset, of $50,870.52, represented by the patent license which it retained. The petitioner was therefore entitled to a deduction in each of the taxable years of a pro rata portion of $50,870.52 for the exhaustion of the license over the life of the principal patent granted October 19, 1915.
The Commissioner correctly reduced surplus on account of the tax due within the taxable years upon the income for the preceding year. Appeal of Russel Wheel & Foundry Co., 3 B. T. A. 1168.
Judgment will he entered on 15 days’ notice, under Rule 50.